Steven T. Waterman (4164)
Megan K. Baker (15086)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT  84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  waterman.steven@dorsey.com
        baker.megan@dorsey.com

*Attorneys for Bank of the West*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| In re: <br><br> SHEET METAL WORKS, INC., <br><br> Debtor. | Case No. 19-28320 <br><br> Chapter 11 |

**BANK OF THE WEST'S OBJECTION TO CHAPTER 11 PLAN**
**(Amended as of July 19, 2020)**

Bank of the West (the "Bank"), secured creditor in this case, hereby files this objection (the "Objection") to the confirmation of the *Chapter 11 Plan (Amended as of July 19, 2020)* [Docket No. 140] (the "Amended Plan") filed by Sheet Metal Works, Inc. ("Debtor").  In support hereof, the Bank respectfully states as follows:

**OBJECTION**

This is the Debtor's second attempt to confirm a plan of reorganization that proposes the use of the Bank's collateral to finance operations over the explicit objections of the Bank.  The Debtor seeks to turn the Bank's short term revolving financing into long term permanent financing while eroding the Bank's collateral base.  The Bank filed an objection to the Debtor's *Chapter 11 Plan (Amended as of May 19, 2020)* [Docket No. 100] (the "Original Plan") because

1

(1) the plan failed to meet the feasibility requirements of 11 U.S.C. § 1129(a)(11) and (2) the plan failed to adequately protect the Bank's interest in its collateral.  *See* Docket No. 122 (the "Original Objection").  Despite having more than a month to resolve these issues, the Debtor has filed the Amended Plan that fails to address the Bank's prior concerns in any meaningful way.  The Bank has told the Debtor those terms needed to obtain the consent of the Bank.  The Amended Plan fails to provide the Bank with the treatment requested or anything close thereto.  Additionally, the Amended Plan now seeks to make monthly payments to Debtor's counsel from the Bank's collateral in an amount equal to or greater than its proposed payments to the Bank, despite the Bank's repeated refusal to consent to such payments.  Based thereon, the Bank objects to the Amended Plan and to the Debtor's continued use of its cash collateral.

## I.     The Amended Plan Fails to Meet the Feasibility Requirements of 11 U.S.C. § 1129(a)(11).

Section 1129(a)(11) provides that a plan cannot be confirmed unless it is feasible.  "The bankruptcy court has an obligation to scrutinize [a] plan carefully to determine whether it offers a reasonable prospect of success and is workable.  The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts of the case."  *Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 685 F.3d 1160, 1187 (10th Cir. 2012) (internal quotations and citations omitted).  "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."  *In re Pikes Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985).

As in the Original Plan, the Amended Plan proposes that the Debtor enter into a new promissory note and repayment schedule with the Bank.  In the Original Plan the Debtor's

2

proposed promissory note (the "Original Proposed Note") contained the following material terms: (a) a repayment period of five (5) years; (b) monthly payments in the amount of $5,000.00; and (c) quarterly payments beginning in month 12 in the initial amount of $25,000.00, increasing to $50,000.00 in month 30, and increasing to month $100,000.00 in month 48.  Essentially, the Proposed Note includes minimal payments at the beginning of the repayment term, with approximately half of the outstanding balance to be paid in the final year of the Proposed Note. *See* Docket No. 100, 41-42.

In the Amended Plan the Debtor's proposed promissory note (the "Amended Promissory Note") contains the following material terms:  (a) a repayment period of four (4) years; (b) monthly payments in the amount of $5,000.00 for the first year, $6,000.00 for the second year, $7,000.00 for the third year, and $8,000.00 for the fourth year, and (c) quarterly payments beginning in month 12 in the initial amount of $25,000.00, increasing to $50,000.00 in month 30, with a balloon payment of $283,811.84 to be made in month 48. *See* Docket No. 140, 68-72.

The Bank raised three primary concerns in its Original Objection:  (1) the length of time the Debtor requests to pay off the note; (2) the ability for the Debtor to make the payments as scheduled; and (3) the potential diminution of the Bank's collateral during the term of the repayment.  Docket No. 122, 3.  As set forth below, the Debtor's Amended Plan and Amended Promissory Note fail to resolve these concerns.

Although the Debtor has decreased the proposed repayment term from five (5) years to four (4) years in the Amended Promissory Note, the Debtor now seeks to pay over $400,000, more than half of the outstanding balance owed to the Bank, in the final year of repayment. Docket No. 140, 72.  The Debtor provides no explanation for delaying the majority of its payments to the Bank

until the final year of repayment, nor does it provide any evidence that it will have the ability to make such significant payments in the final year of repayment. The Debtor states that "[t]he Plan will be funded by post-confirmation earnings of the Debtor, the capital contribution of RC Montrone of $10,000 (or such purchaser of the Debtor's stock), recoveries from avoidance actions, and PPP funds (to the extent obtained." Docket No. 141, 24 at ¶ B. The Debtor's cash projections predict monthly income of $300,000.00 per month, with income of at least $280,000.00 per month required to break even. Docket No. 140, 65. However, a review of the eight monthly operating reports the Debtor has filed in this case shows that the Debtor has never met its $300,000.00 projection and has only met its $280,000.00 minimum twice, in January 2020 and March 2020.[1] The Bank questions the Debtor's ability to fund its minimum monthly obligations under the Amended Plan, let alone its ability to make additional significant quarterly payments and a large balloon payment to the Bank at the end of the repayment term.

As in the Original Plan, the Debtor's Amended Plan fails to provide adequate protection for the diminution in the Bank's collateral during the repayment term. Despite the Debtor's repeated assertions that the Bank's Collateral is not diminishing in value, the Debtor's own financial records indicate otherwise. The Debtor's monthly operating reports show that the value of the Bank's Collateral has diminished by approximately $100,000 during the 9 months the case has been pending. The Debtor's first operating report filed on December 20, 2019 [Docket No. 39] shows outstanding receivables in the amount of $654,893.65, whereas the June operating report filed on July 10, 2020 shows receivables in the amount of $554,037.12 [Docket No. 139].

---

[1] Although the Debtor shows cash receipts in the amount of $387,941.02 in May 2020, $367,000.00 of these funds are attributable to its PPP loan, while only $20,740.43 is attributable to operating income.

Meanwhile, under the Debtor's proposed repayment schedule, it will take at least 18 months for the Debtor to reduce its obligations to the Bank by the same amount. *See* Docket No. 140, 72. This is hardly the indubitable equivalent of the Bank's collateral required for a "cram down" under section 1129(b)(2)(A)(iii). As explained by Judge Learned Hand in *In re Murel Holdings Corp.*, "adequate protection must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now." 75 F.2d 941, 942 (2d Cir. 1935). "The key to indubitable equivalence is that the substituted treatment of the creditor be indubitably equivalent to the creditor's secured claim." *F.H. Partners, L.P. v. Inv. Co. of the Southwest, Inc. (In re Inv. Co. of the Southwest, Inc.)*, 341 B.R. 298, 319 (10th Cir. B.A.P.. 2006). "The indubitable equivalent standard requires both the absence of any reasonable doubt that the secured creditor will receive the payments to which it is entitled, and that the changes forced upon the objecting creditor are 'completely compensatory,' meaning the objecting creditor is fully compensated for the rights it is giving up." *Id.* at 324. The Debtor's proposal requires that the Bank accept minimal payments over the course of four years, and "take its chances" as to whether it will ultimately be repaid or if there will be any collateral remaining at the end of that period. Since the Petition Date, the Debtor's cash on hand has decreased significantly. Although the Debtor's summary of post-petition operations shows an increase from $73,331.44 on the Petition Date to $238,342.52 on June 30, 2020 [Docket Nos. 141, 296], and a cash buildup of $216,725 as of June 21, 2020 [Docket No. 141, 565], the budget that the Debtor provided to the Bank on July 27, 2020 shows that these numbers include PPP funds in the amount of $204,942.00 that have been frozen and are unavailable, and may in fact have to be returned to the SBA. A copy of the budget is attached

hereto as <u>Exhibit 1</u>. Once the PPP funds are deducted, the Debtor's remaining cash as of July 19, 2020 is $23,894.00, and its cash buildup is a mere $6,274.  *See* Ex. 1.

Additionally, the Debtor now seeks to use the Bank's cash collateral to make monthly payments to its bankruptcy counsel in an amount equal to or greater than the amounts to be paid to the Bank.  *See* Docket No. 140, § 2.4 ("The Reorganized Debtor shall (unless otherwise agreed) pay Richards Brandt Miller Nelson's Allowed Administrative Expense in payments of not less than $5,000 per month…").  The Bank has not, does not, and will not consent to the Debtor's use of its cash collateral to pay its attorneys' fees related to this bankruptcy case, and certainly will not consent to payments in an amount guaranteed to diminish the Bank's cash collateral in an amount equal to or greater than the monthly payments being made to the Bank.

## II.     The Bank Objects to the Debtor's Continued Use of its Cash Collateral

As set forth above, the Amended Plan fails to adequately protect the Bank's interest in its collateral.  Additionally, the Debtor now seeks to use the Bank's collateral to make payments to its bankruptcy counsel despite the Bank's explicit prohibition on the use of its collateral for such payments since the inception of this case.  The Bank should not be required to finance the continued operations of the Debtor as well as its attorney's fees for this bankruptcy case to its detriment.  Despite numerous opportunities to address and satisfy the Bank's concerns, the Debtor refuses to do so.  Given the Debtor's unwillingness and recalcitrance to take any steps to protect the Bank's interest in its collateral, as well as its request to use the collateral for purposes not authorized by the Bank, the Bank is not willing to consent to the Debtor's continued use of its cash collateral.  The proceeds of the Bank's collateral must be used to satisfy the obligations owing to the Bank.

4813-3968-6854\2

## CONCLUSION

The Amended Plan cannot be confirmed because it fails to satisfy the feasibility test of section 1129(a)(11). The Amended Plan fails to protect the Bank's interest in the collateral during the duration of the Amended Plan and seeks to use the Bank's collateral to make unauthorized payments to its bankruptcy counsel. Accordingly, the Bank respectfully requests that the Court deny confirmation of the Amended Plan and sustain the Bank's objection to the continuing use of its cash collateral.

DATED this 17th day of August, 2020.

**DORSEY & WHITNEY LLP**

 /s/ Megan K Baker
Steven T. Waterman
Megan K. Baker
*Attorneys for Bank of the West*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2020, I electronically filed the **BANK OF THE WEST'S OBJECTION TO CHAPTER 11 PLAN (Amended as of July 19, 2020)** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF uses and will be served through the CM/ECF system.

- **Adam S. Affleck**    adam-affleck@rbmn.com, andalin-bachman@rbmn.com;affleckar93359@notify.bestcase.com;jennifer-franklin@rbmn.com
- **Megan K Baker**    baker.megan@dorsey.com, long.candy@dorsey.com
- **Laurie A. Cayton tr**    laurie.cayton@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov
- **P. Matthew Cox**    bankruptcy_pmc@scmlaw.com
- **Robert Crockett**    rcrockett@fabianvancott.com, mcrawford@fabianvancott.com
- **Allison Moon**    allison.moon@usdoj.gov, marisol.solis@usdoj.gov
- **Douglas J. Payne**    dpayne@fabianvancott.com, mdewitt@fabianvancott.com
- **Kami L. Peterson**    Kami.Peterson@zionsbancorp.com, Angela.Norton@zionsbancorp.com;Deanne.Koecher@zionsbancorp.com
- **Jeff D. Tuttle**    jtuttle@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com;docket_slc@swlaw.com
- **United States Trustee**    USTPRegion19.SK.ECF@usdoj.gov
- **Steven T. Waterman**    waterman.steven@dorsey.com, bingham.karen@dorsey.com;ventrello.ashley@dorsey.com
- **Melinda Willden tr**    melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov

*/ s / Megan K. Baker*

4813-3968-6854\2

# EXHIBIT 1

Case 19-28320    Doc 161    Filed 08/17/20    Entered 08/17/20 14:27:39    Desc Main
Document    Page 10 of 10

## SHEET METAL WORKS - 7-Week Budget to Actual Comparison

| | Week 1 | | | Week 2 | | | Week 3 | | | Week 4 | | | Week 5 | | | Week 6 | | | Week 7 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 6/2 - 6/8 | 6/2 - 6/8 Actual | Variance | 6/8 - 6/14 | 6/8 - 6/14 Actual | Variance | 06/15 - 06/21 | 06/15 - 06/21 Actual | Variance | 06/22 - 06/28 | 06/22 - 06/28 Actual | Variance | 06/29 - 07/05 | 06/29 - 07/05 Actual | Variance | 07/06 - 07/12 | 07/06 - 07/12 Actual | Variance | 07/13 - 07/19 | 07/13 - 07/19 Actual | Variance |
| **Beginning Cash** | $ 20,966 | $ 186,640 | $ 165,674 | $ 38,433 | $ 251,682 | $ 213,249 | $ 50,250 | $ 188,961 | $ 138,711 | $ 56,785 | $ 216,725 | $ 159,940 | $ 73,502 | $ 207,783 | $ 134,282 | $ 82,123 | $ 204,033 | $ 121,911 | $ 84,721 | $ 200,732 | $ 116,012 |
| **Cash In** | $ 78,846 | $ 88,869 | $ 10,023 | $ 78,846 | $ 5,636 | $ (73,210) | $ 78,846 | $ 114,676 | $ 35,830 | $ 78,846 | $ 20,590 | $ (58,256) | $ 70,000 | $ 22,730 | $ (47,270) | $ 70,000 | $ 30,065 | $ (39,935) | $ 70,000 | $ 104,813 | $ 34,813 |
| PPP Loan/Grant**** | | | | | | | | | | | | | | | | | | | | | |
| **Expenses of Production** | | | | | | | | | | | | | | | | | | | | | |
| Union Industry Fund - Ongoing* | 10,839 | | (10,839) | 10,839 | | (10,839) | 10,839 | 48,895 | 38,056 | 10,839 | | (10,839) | 10,839 | | (10,839) | 10,839 | | (10,839) | 10,839 | 44,005 | 33,166 |
| Direct Labor Costs - Union | 14,821 | 15,226 | 405 | 14,821 | 17,381 | 2,560 | 14,821 | 18,064 | 3,243 | 14,821 | 16,932 | 2,111 | 14,821 | 16,862 | 2,041 | 14,821 | 15,104 | 283 | 14,821 | 17,714 | 2,893 |
| Direct Labor Payroll Taxes** | 7,565 | | (7,565) | 7,565 | | (7,565) | 7,565 | | (7,565) | 7,565 | | (7,565) | 7,565 | | (7,565) | 7,565 | | (7,565) | 7,565 | | (7,565) |
| Steel and Supplies | 20,323 | 2,645 | (17,678) | 20,323 | 22,867 | 2,544 | 20,323 | 7,141 | (13,182) | 20,323 | 6,756 | (13,567) | 20,323 | 4,411 | (15,912) | 20,696 | 8,345 | (12,351) | 20,323 | 14,756 | (5,567) |
| Sub-contractors/Suppliers | | 241 | 241 | | 70 | 70 | | 136 | 136 | | 108 | 108 | | 73 | 73 | | 181 | 181 | | 234 | 234 |
| **Total Cost of Production** | 53,548 | 18,112 | (35,436) | 53,548 | 40,318 | (13,230) | 53,548 | 74,235 | 20,687 | 53,548 | 23,796 | (29,752) | 53,548 | 21,346 | (32,202) | 53,921 | 23,630 | (30,291) | 53,548 | 76,709 | 23,161 |
| **Remaining Cash** | $ 46,264 | $ 257,396 | $ 211,133 | $ 63,731 | $ 217,000 | $ 153,269 | $ 75,548 | $ 229,401 | $ 153,853 | $ 82,083 | $ 213,519 | $ 131,437 | $ 89,954 | $ 209,167 | $ 119,214 | $ 98,202 | $ 210,468 | $ 112,267 | $ 101,173 | $ 228,836 | $ 127,663 |
| **Other Expenses** | | | | | | | | | | | | | | | | | | | | | |
| Officer Compensation | 1,050 | 1,050 | - | 1,050 | 1,050 | - | 1,050 | 1,050 | - | 1,050 | 1,050 | - | 1,050 | 1,050 | - | 1,050 | 1,050 | - | 1,050 | 1,050 | - |
| Wages - Non-Union | 4,000 | 4,000 | - | 4,000 | 4,000 | - | 4,000 | 4,000 | - | 4,000 | 4,000 | - | 4,000 | 4,000 | - | 4,000 | 4,000 | - | 4,000 | 4,000 | - |
| Repairs & Maintenance | 90 | | (90) | 90 | 3,000 | 2,910 | 90 | 2,241 | 2,151 | 90 | 323 | 233 | 90 | | (90) | 90 | | (90) | 90 | | (90) |
| Rents | | | | | 5,210 | 5,210 | 5,210 | | (5,210) | | | - | | | - | | | - | 5,210 | 5,210 | - |
| Payroll Taxes** | 500 | | (500) | 500 | | (500) | 500 | | (500) | 500 | | (500) | 500 | | (500) | 500 | | (500) | 500 | | (500) |
| Business Licenses** | | | | | | | | | | | | - | | | | | | | | | |
| Bank Charges | | 30 | 30 | | | | | | | | 363 | 363 | | 84 | 84 | | | | | | |
| Computer Support | | | | | | | | | | | | | | | | | | | | | |
| Gas & Oil | 452 | 525 | 73 | 452 | 468 | 16 | 452 | 69 | (383) | 452 | | (452) | 452 | | (452) | 452 | 835 | 383 | 452 | | (452) |
| Insurance - General Liability, Workmen's Comp.*** | | | | | | | 3,622 | 4,505 | 883 | | | - | | | - | | 3,770 | 3,770 | 3,622 | 418 | (3,204) |
| Accounting Fees | 542 | | (542) | 542 | 8,672 | 8,130 | 542 | | (542) | 542 | | (542) | 542 | | (542) | 542 | | (542) | 542 | | (542) |
| Office Expenses | 68 | 109 | 41 | 68 | | (68) | 68 | | (68) | 68 | | (68) | 68 | | (68) | 68 | 81 | 13 | 68 | | (68) |
| Printing | | | | | | | | | | | | | | | - | | | | | | - |
| Telephone/Internet | | | | | | | | 434 | 434 | 750 | | (750) | | | - | | | | | 1,040 | 1,040 |
| Utilities | | | | | 1,639 | 1,639 | 2,100 | 377 | (1,723) | | | | | | | | | | 2,100 | 1,902 | (198) |
| **Total Fixed Costs** | $ 6,702 | $ 5,715 | $ (987) | $ 6,702 | $ 24,039 | $ 17,337 | $ 17,634 | $ 12,676 | $ (4,958) | $ 7,452 | $ 5,736 | $ (1,716) | $ 6,702 | $ 5,134 | $ (1,568) | $ 6,702 | $ 9,736 | $ 3,034 | $ 17,634 | $ 13,620 | $ (4,014) |
| **NET CASH FLOW PRIOR TO PROPOSED CRITICAL VENDOR PAYMENTS** | $ 39,562 | $ 251,682 | $ 212,120 | $ 57,029 | $ 192,961 | $ 135,932 | $ 57,914 | $ 216,725 | $ 158,811 | $ 74,631 | $ 207,783 | $ 133,153 | $ 83,252 | $ 204,033 | $ 120,782 | $ 91,500 | $ 200,732 | $ 109,233 | $ 83,539 | $ 215,216 | $ 131,677 |
| **Administrative Costs** | | | | | | | | | | | | | | | | | | | | | |
| Legal Fees & Costs | 1,129 | | (1,129) | 1,129 | | (1,129) | 1,129 | | (1,129) | 1,129 | | (1,129) | 1,129 | | (1,129) | 1,129 | | (1,129) | 1,129 | | (1,129) |
| Quarterly Fees** | | | | | | | | | | | | | | | | | | | | | |
| **Total Administrative Costs** | 1,129 | | (1,129) | 1,129 | | (1,129) | 1,129 | | (1,129) | 1,129 | - | (1,129) | 1,129 | - | (1,129) | 1,129 | - | (1,129) | 1,129 | - | (1,129) |
| | $ 38,433 | $ 251,682 | $ 213,249 | $ 55,900 | $ 192,961 | $ 137,061 | $ 56,785 | $ 216,725 | $ 159,940 | $ 73,502 | $ 207,783 | $ 134,282 | $ 82,123 | $ 204,033 | $ 121,911 | $ 90,371 | $ 200,732 | $ 110,362 | $ 82,410 | $ 215,216 | $ 132,806 |
| **Secured Lender Payment** | | | | $ 5,000 | $ 4,000 | $ (1,000) | | | | | | | | | | $ 5,000 | | (5,000) | $ 4,000 | | 4,000 |
| | | | | 650 | | (650) | | | | | | | | | | 650 | | (650) | | | |
| | $ - | | $ - | $ 5,650 | $ 4,000 | $ (1,650) | | | $ - | | | | | | | $ 5,650 | | $ (5,650) | $ - | $ 4,000 | $ 4,000 |
| **PROJECTED CASH BUILD-UP** | $ 38,433 | $ 251,682 | $ 213,249 | $ 50,250 | $ 188,961 | $ 138,711 | $ 56,785 | $ 216,725 | $ 159,940 | $ 73,502 | $ 207,783 | $ 134,282 | $ 82,123 | $ 204,033 | $ 121,911 | $ 84,721 | $ 200,732 | $ 116,012 | $ 82,410 | $ 211,216 | $ 128,806 |

*Budgeted on a weekly basis but paid on a monthly basis.
**Budgeted on a monthly basis but paid on a quarterly basis.
***Periodic payment
****The PPP Grant Funds have been frozen and are unavailable. Therefore, to determine available cash subtract $204,942 from Projected Cash Buildout in the Actual Column.

Please note that, due to the nature of this industry, the budget projections are estimated. Weekly amounts will vary depending upon project schedules, change orders, work flows and payments received.